UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                         13 CR 889 (RMB)

JAMES SMITH,

             Defendant.

------------------------------x

                         New York, N.Y.
                         July 27, 2016
                         2:45 p.m.


Before:

                HON. RICHARD M. BERMAN,

                         District Judge


                  APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
JUSTINA GERACI
     Assistant United States Attorney

MOSKOWITZ & BOOK LLP
     Attorneys for Defendant
BY:  AVRAHAM MOSKOWITZ

SEWARD & KISSEL LLP
BY:  RITA GLAVIN


ALSO PRESENT:  NORA ELLINGSEN, INTERN

1          THE COURT:  We are here, as you know, today for

2   sentencing.  The rules of sentencing have changed dramatically

3   over the last eight years or so as a result of Supreme Court

4   decisions and decisions of the Second Circuit Court of Appeals.

5          The upshot of these changes is that the United States

6   Sentencing Guidelines are no longer mandatory.  What sentencing

7   courts do instead -- and what I have done prior to coming out

8   on the bench today -- is to review the factors found at 18 U.S.

9   Code, Section 3553(a), which include but are not limited to the

10  nature and the circumstances of the offense, the history and

11  characteristics of the defendant, and the need for the sentence

12  imposed to accomplish the following objectives:

13         One is reflecting the seriousness of the offense.

14  Another is promoting respect for the law.  Another is providing

15  a just punishment for the offense.  Another is to afford

16  adequate deterrence to criminal conduct.  Yet another is to

17  protect the public from further crimes and also provide the

18  defendant with needed educational or vocational training,

19  medical or mental health counseling, or other correctional

20  treatment in the most effective manner.

21         In doing all that, we look at the kinds of sentences

22  that are available, the kinds of sentences and the sentencing

23  range established in the United States Sentencing Guidelines,

24  as well as any policy statements issued by the United States

25  Sentencing Commission.

1          We seek to avoid unwarranted sentence disparities

2     among similarly situated defendants and, in appropriate cases,

3     to provide for restitution.

4          We start with a sentencing guidelines analysis even

5     though as I said, the guidelines are no longer mandatory.  In

6     this case, the sentencing guidelines range is 360 months to

7     life imprisonment.  Plus there's a 10-year statutory mandatory

8     minimum consecutive sentence with respect to Count Three.  The

9     offense level is 40, and the criminal history category is V.

10          I should mention that there's been some email exchange

11     between my office and probation.  In some documentation,

12     probation had said that there was a five-year consecutive

13     sentence for Count Three.  We believe it should be then.

14          We did get an email back from probation that said that

15     they had erred in that regard, and it is ten years and not five

16     years as the consecutive mandatory minimum.

17          In considering the factors at 18 U.S. Code, Section

18     3553(a), these points stand out.  Mr. Smith pled guilty on or

19     about December 14, 2015, to a three-count superseding

20     information, and he pled pursuant to what's called a Pimentel

21     letter.

22          He pled guilty to three offenses, and they are

23     conspiracy to commit Hobbs Act robbery, conspiracy to

24     distribute and possess with the intent to distribute

25     5 kilograms and more of cocaine, and discharge of a firearm

during and in relation to a drug-trafficking crime and crime of violence, which, in this instance, caused the death of a man named Danny Ulerio Laura.

It was Mr. Smith who shot Mr. Laura during his drug robbery in which defendant and others were robbing or attempting to rob Mr. Laura of his drugs.

Mr. Smith is 41.  He'll be 42 at the end of August. He has a GED degree.  Single.  No children.  He has a prior criminal history which includes a conviction for manslaughter in the first degree, attempting to elude the police, and robbery.

Indeed, I think he's currently serving a 41-month sentence of imprisonment for the robbery under 11 CR 294, a case heard by Judge Buchwald.

Mr. Smith has some mental health issues and history, as well as a disciplinary record while incarcerated.  Probation states that Mr. Smith has no juvenile adjudications, but defense counsel did advise that he spent some time at Spofford Juvenile Detention Facility in the Bronx as a juvenile which normally is attendant upon family court criminal proceedings, juvenile delinquency proceedings.

Probation classifies defendant as a career offender, but the government contends that defendant does not qualify as a career offender because one of the so-called "qualifying convictions" relied upon by probation was committed after the

instance offense.

I agree that the defendant is not determined to be a career offender.  Under United States Sentencing Guidelines 4B1.2, the defendant must have committed the offense of conviction subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled-substance offense in order for the conviction to qualify as a prior felony conviction.

The offenses in this case occurred prior to the robbery conviction, which is a predicate for a career offender, a sought to be predicate.  That robbery conviction does not qualify as a prior felony conviction for purposes of classifying the defendant as a career offender.

Defendant was raised primarily by his mother and stepfather.  His father died when he was young, and his mother suffered from considerable mental health issues, including bipolar disorder.

Probation states that Mr. Smith suffers from health issues, including asthma, allergies, deviated nasal septums and seizures.  Probation says defendant suffers from breathing issues which are exacerbated by weight gain.

Probation says also that defendant has a lengthy history of mental health illness which went undiagnosed for years, including diagnoses of schizophrenia, bipolar disorder, and depression.

1          It's also reported that Mr. Smith has attempted to

2    commit suicide and has experienced psychotic episodes while in

3    BOP custody.  He's presently under the care of mental health

4    professionals at MDC and has been prescribed Trazodone and

5    another drug which I'm not familiar with called haloperidol.

6          According to probation, at the age of 14, Mr. Smith

7    became part of a car theft crew presumably led by a crack

8    dealer named Clint, and he used the proceeds of that theft to

9    buy expensive items.

10          Probation says that defendant began consuming alcohol

11    with his friends at the age of 12 and at 13 began smoking

12    marijuana.  By the age of 15, he was smoking up to 20 times a

13    day and snorting cocaine and has also used ecstasy.

14          Defense counsel advised the Court that defendant's

15    substance abuse included alcohol, marijuana, cocaine, and angel

16    dust and reported that defendant would party for days, crash,

17    and then begin that same cycle over again.

18          At one time Mr. Smith worked for a tire repair shop.

19    Defense counsel says this employment was for a two-month period

20    after defendant's release from state custody.

21          By letter dated June 6, 2016, defense requests a

22    sentence between the mandatory minimum required by statute and

23    the bottom end of the applicable guideline range under the

24    advisory sentencing guidelines.

25          I take it to be a request for a sentence of 30 years.

1    Is that a way to interpret that application?

2            MR. MOSKOWITZ:  Yes, your Honor.

3            THE COURT:  Defense counsel details the defendant's

4    upbringing and that of his mother, including his mother's

5    mental health issues and the loss of his father.  And defense

6    counsel describes in detail the defendant's mental health

7    history and the psychiatric episodes that he has experienced.

8            Defense counsel also notes that defendant takes

9    prescribed medication as I mentioned.  And when he does, he can

10   be calm and stable.  He has a pattern, however, of not taking

11   his medication when he feels well enough as he thinks the

12   medication is not necessary at such periods of time.

13           Defense states, "As James has shown at various points

14   in his life when he is properly medicated, he is an affable

15   person who can act responsibly and contribute to society.  When

16   not in the throes of a manic episode, James was able to

17   complete numerous vocational courses while in custody, complete

18   also his GED, and even serve as a facilitator in a violence

19   prevention program in the state prison system."

20           By a submission dated June 30, 2016, the government

21   requests a sentence within the guideline range of 360 months to

22   life, which, according to the government, "Appropriately

23   captures the defendant's substantial criminal history and, more

24   significantly, his conduct and role in this robbery turned

25   murder."

1          The government agrees with the defense that the murder

2     of Mr. Laura was not premeditated.  "In fact, all of the

3     government's evidence indicates that the plan was to rob Laura

4     of his drugs and not to kill him."  That's a quote from the

5     government's submission.

6          Another quote is that the government "also submits

7     that the defendant did not orchestrate the robbery.  He was a

8     member of the robbery crew but by no means the leader.

9     However, the fact remains that the defendant callously took

10    away the life of another individual for the second time.

11         "Sixteen years prior to this murder, the defendant

12    shot and killed another individual named Carlos Hernandez in

13    the Bronx during a dispute with his cousin."

14         The government also notes that 12 days after the

15    murder of Mr. Laura, the defendant was arrested in a DEA sting.

16    That's the Judge Buchwald case.  The government states, "Sadly,

17    the defendant has not demonstrated that he is capable of living

18    in a society without committing, not only crimes, but extremely

19    violent and deadly crimes."

20         I've also reviewed the presentence investigation

21    report dated March 7, 2016, with the sentencing recommendation

22    and addendum of the same date and the letters from counsel,

23    Mr. Moskowitz and Ms. Glavin, dated June 6, 2016, and 6-30-16

24    from the government.

25         Have defense counsel and Mr. Smith had the opportunity

1    to read and discuss the presentence investigation report, the

2    addendum, and the sentencing recommendation?

3            MS. GLAVIN:  Yes, your Honor.

4            THE COURT:  Mr. Smith, you've been over those

5    materials with your counsel?

6            THE DEFENDANT:  Yes, your Honor.

7            THE COURT:  Do either of you or any of you have

8    remaining objections to the presentence report?

9            MS. GERACI:  Your Honor, I've spoken with defense

10   counsel.  We just have three things, two of which your Honor

11   already touched on.  The first one is new.

12           Paragraph 46 of the PSR indicates that during this

13   robbery/sting operation, the defendant and his coconspirators

14   were found in possession of a firearm.

15           It turns out upon further review of that operation,

16   they were not found to be in possession of a firearm.  Rather,

17   they were found to be in possession of this tire jack without a

18   handle.  That is also referenced at paragraph 46.  So we just

19   wanted to clarify that for the Court.  Defense counsel is in

20   agreement with that as well.

21           THE COURT:  So what language is incorrect in paragraph

22   46?

23           MS. GERACI:  It's the fourth line down, your Honor,

24   "Smith and his coconspirators were found in possession of a

25   firearm."

1    THE COURT:  So should that be struck?

2    MS. GERACI:  Yes.  Correct, your Honor.

3    THE COURT:  Okay.

4    MS. GERACI:  Your Honor, I've spoken with defense

5  counsel.  Apparently page 21 of the PSR also makes a reference

6  to that firearm.  The third paragraph down, your Honor, I

7  believe the second sentence.

8    THE COURT:  The third paragraph, the sentence

9  beginning, "While still under"?

10    MS. GERACI:  Just one moment, your Honor.

11    (Pause)

12    MS. GERACI:  On page 21, your Honor, we're looking at

13  the third paragraph down, the third that begins, "Smith poses a

14  serious risk."

15    THE COURT:  Right.

16    MS. GERACI:  Three lines below that sort of in the

17  middle of the line it says, "Smith engaged in two armed robbery

18  conspiracies, possessed firearms."  I believe that that may

19  relate to the sting operation.  And, to the extent it is, we

20  would just have your Honor note that that sting operation did

21  not possession of a firearm.

22    THE COURT:  This says, "two armed robberies.

23  Possessed firearms."

24    MS. GERACI:  So it really should be he possessed a

25  firearm in one armed robbery.  The other robbery was not armed.

1    I suppose it could also have read, "Engaged in robberies.

2    Possessed a firearm."

3          THE COURT:  So I've changed my copy to read,

4    "Possessed a firearm in one of the robberies."  Is that

5    accurate?

6          MS. GERACI:  That's fine for the government,

7    your Honor.

8          MR. MOSKOWITZ:  Yes, your Honor.

9          THE COURT:  Okay.

10          MS. GERACI:  The other two items in the PSR that

11    your Honor already addressed, in paragraph 49 it notes that

12    defendant is a career offender.  I think we've clarified that

13    for the Court.  Paragraph 82 is the statutory provision where

14    they mistakenly note that the minimum --

15          THE COURT:  Hold on before you get to that.  So how do

16    you want to change 49?

17          MS. GERACI:  I believe, if you just cut the line after

18    the criminal history score is 11 and sort of end with,

19    therefore, the criminal history category is V instead of VI.

20          THE COURT:  No.  I don't get it.  So you're on

21    paragraph 49, "The defendant is a career offender because he

22    was at least --" that should come out; right?

23          MS. GERACI:  Correct, your Honor.  My proposal is to

24    strike that whole section about being a career offender.

25    Perhaps it could read, "The total criminal history score is 11.

1   Therefore, the criminal history category is V."

2           THE COURT:  Is that okay with defense?

3           MS. GLAVIN:  Yes, your Honor.

4           THE COURT:  So you want to delete the balance of line

5   1, all of line 2, all of line 3, and line 4 up to "Therefore."

6   Is that right?

7           MS. GERACI:  Yes, your Honor.  And then change the

8   criminal history category as they have it listed.

9           THE COURT:  Therefore, the criminal history

10  category --

11          MS. GERACI:  It should be V.  They have it becomes VI

12  because of the career offender.

13          THE COURT:  "is V."

14          MS. GERACI:  Yes, your Honor.

15          THE COURT:  And then the last one?

16          MS. GERACI:  The last one is paragraph 82, the

17  statutorily provided custody provision.  The provision under

18  Count Three, paragraph 82, should be the minimum term of

19  imprisonment is ten years.

20          THE COURT:  Instead of five?

21          MS. GERACI:  Yes, your Honor.

22          THE COURT:  Okay.

23          MS. GERACI:  That's all I have, Judge.  Thank you.

24          THE COURT:  Then, defense counsel, apart from these

25  modifications, do you have any objections to the presentence

1   report?

2           MS. GLAVIN:  No, your Honor.

3           THE COURT:  And you agree with the modifications that

4   we just made?

5           MS. GLAVIN:  Yes, your Honor.

6           THE COURT:  How about, Mr. Smith?  Do you have any

7   further objections?

8           THE DEFENDANT:  No.  No, your Honor.

9           THE COURT:  I will return the report to probation.

10  I'm happy to hear from defense counsel, Mr. Smith, and the

11  government at this time.

12          MR. MOSKOWITZ:  Thank you, your Honor.  Your Honor

13  took away a lot of my thunder by talking about those facts that

14  we just --

15          THE COURT:  I'm just trying to save a little attorney

16  wear and tear.

17          MR. MOSKOWITZ:  Thank you, your Honor.  Let me focus

18  my presentation on how we would emphasize the significance of

19  the various facts that your Honor spoke about.

20          I begin by stating the obvious.  This is a difficult

21  case and I would suggest to the Court really is a tragic case

22  from everybody's perspective.

23          First of all, it's tragic because there was a

24  senseless loss of life in a botched drug robbery.  There's no

25  excuse for it.  There's no justification.

1          Having said that, it is important to note, as

2     your Honor did and as the government did, that this was not a

3     situation that was premeditated.  Certainly nobody intended

4     that to happen.  It happened.  There's just no excuse for it.

5     It is tragic, and it's senseless.

6          When we look at it and we look at Mr. Smith, I also

7     suggest that there's another tragedy here, and that is in many

8     respects, Judge, Mr. Smith sitting here, if not in this case in

9     some other case, was almost predictable in that it is the

10    result of a horrific upbringing and the terrible personal

11    background and the serious, untreated, undiagnosed mental

12    health problems that he's had virtually from the outset.

13    Certainly from adolescence.

14          As I was thinking about this coming over here, I would

15    say to the Court there can be little doubt that if Mr. Smith

16    had grown up in a more stable, healthier, functional household

17    with parents that are capable of taking care of him, guiding

18    him, being parents, his mental health problems would have been

19    diagnosed.  They would have been treated.  Maybe he would have

20    had a chance at life, if his parents were capable of parenting

21    him.  By that I include not only his mentally ill mother but

22    his absent father and his absent stepfather.

23          Had any of them been able to parent him, he would not

24    have been out on the streets as a 12-, 13-, 14-year-old.  And

25    he wouldn't have ended up making the associations that he made.

1    He might have gotten an education, and he might have had a

2    chance at life.

3         Unfortunately, none of that happened.  The home that

4    he grew up in was tragically dysfunctional.  His life,

5    beginning in adolescence, took a path that we who are in the

6    business are all too familiar with.  I'm sure your Honor has

7    seen many of these cases.  I certainly have from my years doing

8    murder cases and death penalty cases in this courthouse.

9         What is also clear, Judge, is that there's no

10   question, given the nature of the crime, given Mr. Smith's

11   background and criminal history, that a significant sentence is

12   warranted.  We don't run away from that.  What we do dispute is

13   the inclusion of the probation department that the appropriate

14   sentence here is life in prison.

15        I think, Judge, that we as a society have come to

16   realize that sentencing mentally ill people to life in prison

17   is really not appropriate, assuming they can be treated and

18   that there is some hope that they can become law abiding and

19   productive.

20        I think that although James' history of treatment is

21   sporadic and hasn't been consistent and he has often stopped

22   taking the medications that make him stable, he has shown that

23   when he is medicated and when he is appropriately treated, he

24   can be law abiding, he can be productive, and he would not be

25   dangerous.

1          What I suggest to the Court -- and what Ms. Glavin has

2    suggested to the Court -- is that a sentence in the 20-year

3    range, which is between the mandatory minimum and the low end

4    of the guidelines, would be appropriate in this case because it

5    would allow for an appropriate sentence for the crime that was

6    committed.

7          It would give Mr. Smith an opportunity to have a

8    lengthy period of time under supervision where he is going to

9    be treated, is going to be medicated, and he would get used to

10   that regiment.  That would give us hope and optimism that when

11   he gets out, he would be able to continue in that vein.

12         THE COURT:  Is there that resource during

13   incarceration?

14         MR. MOSKOWITZ:  What I was going to suggest to the

15   Court towards the end of this -- but I'll address it now -- is,

16   yes.  There are numerous medical facilities.  The ones that I

17   am familiar with, the closest one to the New York area, is

18   Devens where he can be treated.  There's another one in Butner,

19   North Carolina.  There's another one in Springfield, Missouri.

20         All of those places have the facilities to evaluate

21   and treat Mr. Smith appropriately.  I was going to ask for the

22   Court at the end, whatever the sentence is, that the Court

23   direct or recommend -- I know the Court can't direct but can

24   recommend that he be in a facility where he can get that type

25   of treatment.  He clearly needs it, and it is clearly

1    appropriate.

2         THE COURT:  Is he getting it now?

3         MR. MOSKOWITZ:  He is getting medication now.  He's

4    been on it.  He actually was in a unit that was, as I

5    understand, operated by the mental health -- I guess it's a

6    psychologist -- at the MDC.  That recently was shut down.  So

7    he's been moved back to a more regular unit.

8         I think clearly he does well when he can get the

9    treatment, and clearly we are asking the Court to make that

10   recommendation.

11        I know that the real issue here for the Court and for

12   everybody is well, is there a chance that he can get out and

13   not be dangerous.  I believe, your Honor, that given a lengthy

14   period of time where he is medicated and stabilized and becomes

15   familiar and accepting of the routine, yes.  There is reason to

16   believe that.

17        I note to the Court that given Mr. Smith's age, if the

18   Court gives him a sentence in the range that we are suggesting,

19   he's going to get out.  He's going to be somewhere in his 60's

20   at a time when all of the studies show people tend to be much

21   less likely to commit crimes.

22        One more point I want to make.  I made it in our

23   letter to the Court.  Mr. Smith made the decision to plead

24   guilty to the charges knowing that the Court could sentence him

25   to life but hoping that the Court would choose not to.

1          In so doing, he accepted responsibility, and he saved

2    this Court and the government significant time and resources.

3    That should count for something.  I don't know how the Court

4    can evaluate that, but I suggest to the Court that if the Court

5    were to follow the probation department's recommendation and

6    sentence Mr. Smith to life, that would be sending a

7    nonproductive and unhelpful message to similarly situated

8    defendants which says, it doesn't matter if you plead, if you

9    accept responsibility, there's a good chance you're going to

10   end up with a life sentence.

11         THE COURT:  In this instance, I absolutely agree with

12   that.

13         MR. MOSKOWITZ:  So, Judge, in sum, I ask the Court to

14   accept our recommendation, give him a sentence in that range

15   that is somewhere from the mandatory minimum to the low end of

16   the guideline range.

17         Give Mr. Smith the hope that if he survives that

18   sentence, which, by the way, we are in the business -- we throw

19   around numbers.  Sometimes we lose perspective on just how long

20   it is.

21         A 20-year sentence, a 25-year sentence, a 30-year

22   sentence -- that is an enormous amount of time.  It needs to be

23   recognized, and we have to take a step back.  It's hard for me

24   to imagine that I'm standing here advocating for a sentence in

25   that range, but I am, with the full understanding that it

1    really is a very long time.  I know your Honor appreciates that

2    too.

3              A sentence in that range would, I think, satisfy all

4    of the elements or the factors under 3553(a) and would give

5    Mr. Smith a chance at some semblance of a life when he gets out

6    and at a time where I don't believe he would any longer

7    represent a danger to society.

8              Thank you, your Honor.

9              THE COURT:  Thank you.

10             Mr. Smith, would you like to make a statement?

11             THE DEFENDANT:  Yes.  I would like to make a

12   statement.  First and foremost, I would like to pay my respects

13   to the family, you know.  I feel that I caused them a lot of

14   pain.  I never meant this to happen.  It just happened.

15             It was quick.  I can't really explain it.  It just

16   happened.  I just feel really bad for the family.  I just wish

17   I could change what happened that day.  I just wish -- every

18   day I deal with it, and it's hard.  Every day I go through it.

19   What happened that day wasn't supposed to happen.

20             I know I can't change things.  It's already done.

21   Life is short.  If you make a mistake, you have to do your

22   time.  You have to pay for your mistakes.  That's all I've got

23   to say, your Honor.

24             THE COURT:  How about the government?

25             MS. GERACI:  Your Honor, the government rests on its

1    submission.

2              THE COURT:  Then I'm going to adopt the findings of

3    fact in the presentence report as we have modified it today

4    unless defense counsel has any further objections.

5              MR. MOSKOWITZ:  Your Honor, it's not an objection, but

6    I would note your Honor had mentioned earlier about the prior

7    case and the fact that he got a sentence, I believe, of 41

8    months.

9              It's our understanding, Ms. Glavin and I, that given

10   the time that was left on that sentence at the time that he was

11   brought over here, that sentence, as we calculate it, should

12   have run out by now.

13             So, in calculating whatever sentence your Honor is

14   giving, I don't think the issue of whether it's concurrent or

15   consecutive to that time should play in.

16             THE COURT:  You don't think it applies?

17             MR. MOSKOWITZ:  No.  Ms. Glavin represented Mr. Smith

18   in the original case.  He had a 41-month sentence.  He went in

19   in February of 2011.  So by all calculations, it should be

20   done.

21             THE COURT:  Any further objections from Mr. Smith?

22             MR. MOSKOWITZ:  No, your Honor.

23             THE DEFENDANT:  No, your Honor.

24             THE COURT:  How about from the government?

25             MS. GERACI:  No, your Honor.

1          THE COURT:  So let's preview what the sentence is

2     going to be here.  I intend to impose a sentence not quite what

3     Mr. Moskowitz has added for but a total sentence that will come

4     to 34 years.  So that's 24 on Counts One and Two plus 10

5     mandatory consecutive.  That's how I'm doing the math.  That is

6     a substantial sentence obviously.  But, as I'll explain, I

7     think it's warranted by a review of the 3553(a) factors.

8          That would be followed by five years of supervised

9     release, and they would be subject to the mandatory conditions

10    that defendant not commit another federal, state, or local

11    crime; that he not illegally possess a controlled substance;

12    that he not possess a firearm, dangerous weapon, or destructive

13    device; and that he refrain from any unlawful use of a

14    controlled substance.

15         He'd be required to submit to one drug test within 15

16    days of placement on supervision and at least two unscheduled

17    drug tests thereafter as may be directed by the probation

18    officer.

19         In addition, he'd be required to comply with what are

20    called standard conditions 1 through 13 plus the following:

21         That he be supervised in his district of residence and

22    that he report to probation within 48 hours of release from

23    custody and that he participate in a program approved by the

24    probation department for a substance abuse which program shall

25    include testing to determine whether he has reverted to the use

1    of drugs or alcohol.

2            He may be required to contribute to the cost of

3    services rendered as by a copayment in an amount to be

4    determined by the probation officer based on such factors as

5    ability to pay or availability of third-party payment.

6            In addition, he is required to participate in weekly

7    therapeutic counseling by a licensed therapist during that

8    five-year period of supervised release and may be required to

9    contribute to the costs of services rendered as by a copayment

10   in an amount to be determined by the probation officer.

11           I don't intend to impose any fine.  Nor do I intend to

12   impose restitution.  I do intend to impose a $300 special

13   assessment, which is mandatory and due immediately.

14           Briefly, the reasons for this sentence are that the

15   offense level is 40, and the criminal history category is V.

16   The guideline range in fact is 360 months to life imprisonment

17   plus 10 consecutive mandatory minimum for Count Three.

18           I believe this sentence is appropriate given the

19   seriousness of the offense, the needs for punishment and

20   deterrence.  I've considered the nature and circumstances of

21   the offense and also the compelling history and characteristics

22   of Mr. Smith.

23           I think this sentence reflects the seriousness of the

24   offense, promotes respect for the law, provides just

25   punishment, affords adequate deterrence to criminal conduct,

1   protects the public from further crimes, and provides defendant

2   with needed educational or vocational medical care and, in

3   particular, mental healthcare or other correctional treatment

4   in the most effective manner.

5          So I will make a recommendation that Mr. Smith be

6   housed at a medical facility that is able to evaluate and treat

7   particularly these mental health issues.

8          So, defense counsel, do you wish to say anything

9   before I impose the sentence?

10         MR. MOSKOWITZ:  No, your Honor.

11         THE COURT:  Mr. Smith, anything further?

12         THE DEFENDANT:  No, your Honor.

13         THE COURT:  How about Ms. Glavin?

14         MS. GLAVIN:  No, your Honor.

15         THE COURT:  The government?

16         MS. GERACI:  No, your Honor.

17         THE COURT:  If you would please stand, Mr. Smith.

18         The guideline range, given all the factors that are

19   relevant, is 360 months to life plus 10 years consecutive

20   sentence.  Having considered the factors at 18 U.S. Code,

21   Section 3553(a), it is my judgment that James Smith be

22   committed to the custody of the Bureau of Prisons to be

23   imprisoned for a term of 34 years.  That's 24 for Counts One

24   and Two and 10 consecutive for Count Three.

25         That's followed by five years of supervised release on

1    the terms and conditions that I mentioned before and

2    incorporate here by reference, both the mandatory and the

3    special conditions.  I'm not imposing a fine.  I'm not imposing

4    restitution.  I am imposing a $300 special assessment.

5           As I said before, the reasons for this sentence are

6    that I believe that the sentence is appropriate and compatible

7    with the criteria at 18 U.S. Code, Section 3553(a),

8    particularly the seriousness of the offense, the needs for

9    punishment and deterrence, and also the need to provide

10   appropriate medical and mental healthcare, among others.  I

11   incorporate that discussion from before here by reference.

12          Does either counsel know of any legal reason why the

13   sentence should not be imposed as so stated?

14          MS. GERACI:  No, your Honor.

15          MR. MOSKOWITZ:  No, your Honor.

16          THE COURT:  Then I hereby order the sentence to be

17   imposed as so stated.

18          Mr. Smith, you have the right to appeal this sentence.

19   If you are unable to pay the costs of an appeal, you have the

20   right to apply for leave to appeal in forma pauperis.

21          If you request, the clerk of court will prepare and

22   file a notice of appeal on your behalf immediately.

23          Do you understand your appeal rights?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Any open counts the government will seek

1    to resolve at this time?

2          MS. GERACI:  Yes, your Honor.  At this time the

3    government moves to dismiss the various underlying indictments

4    against defendant.

5          THE COURT:  I grant that application.  Starting with

6    the government, do you wish to add anything to today's

7    sentencing proceeding?

8          MS. GERACI:  No, your Honor.

9          THE COURT:  The defense?

10         MR. MOSKOWITZ:  No, your Honor.

11         THE COURT:  Mr. Smith, I think that finishes our work

12   here today.  I really wish you the best of luck going forward.

13   Thanks very much.

14         MS. GLAVIN:  Thank you, your Honor.

15         (Adjourned)

16

17

18

19

20

21

22

23

24

25